# 14-58(L), 14-339, 14-771

## UNITED STATES COURT OF APPEALS
### FOR THE
### SECOND CIRCUIT

Docket No. 14-58-cr.(L), 14-339, 14-771

United States of America,

        Appellee,

v.

Jermeere McKinnon, AKA Hood, Jeffery Powell, AKA Ghost, Titus Nickens, AKA Tit,

        Defendants - Appellants,

Kahari Smith, AKA SEALED DEFENDANT, AKA Kiss, Habakkuk Nickens, AKA HB, Kenneth Jackson, AKA Karome, Riadda Travet, AKA Rico, Christopher Mike, AKA Jah, AKA C-Mike, Nathan King, AKA Nate, Dwayne Hester, AKA Black, Donald R. Johnson, Jr., AKA D-Jigga,

        Defendants.

## ON APPEAL FROM A JUDGMENT OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF NEW YORK

## BRIEF FOR APPELLANT JERMEERE MCKINNON

MARJORIE M. SMITH
109 Wolcott St., Suite 2
Brooklyn, NY 11231
(845) 365-6335
Attorney for Appellant MCKINNON

# TABLE OF CONTENTS

STATEMENT PURSUANT TO FED. R. APP.P. 28(a) . . . . . . . . . . . . . . . . . . 1

QUESTIONS PRESENTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    The Indictment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    The Guilty Plea. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        The Plea Agreement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
        The Plea Hearing.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    The Presentence Report.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    Counsels' Sentencing Submissions. . . . . . . . . . . . . . . . . . . . . . . . . 10

    The Sentencing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

ARGUMENT

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

POINT I. **THE DISTRICT COURT FAILED TO ADEQUATELY EXPLAIN MR. McKINNON'S SENTENCE, AND INAPPROPRIATELY CONDUCTED PART OF THE SENTENCING OUTSIDE McKINNON'S PRESENCE**. . . . . . 19

POINT II. **MCKINNON'S SENTENCE OF 85 MONTHS' IMPRISONMENT SHOULD BE SET ASIDE BECAUSE IT IS UNREASONABLE**. . . . . . . . . . . . . . . . . . . . . 21

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

Booker v. United States, 543 U.S. 220 (2005) .......................... 17

Gall v. United States, 552 U.S. 38 (2007) ......................... 17, 23

United States v. Amico, 486 F.3d 764 (2d Cir. 2007). ................... 20

United States v. Canova, 485 F.3d 674 (2d Cir.2007). .................. 18

United States v. Cavera, 550 F.3d 180 (2d Cir.2008). . ................. 18

United States v. Castillo, 460 F.3d 337 (2d Cir. 2006).. ................ 21

United States v. Coston, 737 F.3d 235 (2d Cir. 2013) (per curiam).......... 20

United States v. Fernandez, 443 F.3d 19 (2d Cir. 2006). ................ 17

United States v. Fleming, 397 F.3d 95 (2d Cir. 2005). . ................. 22

United States v. Ministro-Tapia, 470 F.3d 137 (2d Cir. 2006).. ........... 22

United States v. Selioutsky, 409 F.3d 114 (2d Cir. 2005). ............... 21

United States v. Williams, 475 F.3d 468, 477 (2d Cir. 2007). ............ 23

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

———————————————————————— x

UNITED STATES OF AMERICA,

Docket No.: 14-58-cr.(L), 14-339, 14-771

     Appellee,

       v.

SMITH (MCKINNON),

     Defendant-Appellant.

———————————————————————— x

## STATEMENT PURSUANT TO FED. R. APP. P. 28(a)

Jermeere McKinnon appeals from a judgment of the United States District Court for the Northern District of New York (Mordue, J.). Jurisdiction of the appeal is in this Court pursuant to 28 U.S.C. §1291 and 18 U.S.C. §3742. Jurisdiction of this action was in the district court pursuant to 18 U.S.C. §3231. Judgment was entered on December 20, 2013. A. 9.[1] Appellant filed a timely notice of appeal which was entered on December 30, 2013. A. 9.

---

[1] "A." references are to the pages of appellant's separate appendix.

1

## QUESTIONS PRESENTED

1. Whether the District Court's sentencing of Mr. McKinnon was procedurally improper.

2. Whether Mr. McKinnon's sentence of 85 months' imprisonment should be set aside because it is unreasonable under *United States v. Booker*, 543 U.S. 220 (2005) and its progeny.

## STATEMENT OF THE CASE

**PRELIMINARY STATEMENT**

Jermeere McKinnon appeals from his sentence, after a guilty plea, for one count of engaging in RICO activity, pursuant to 18 U.S.C. §1962(d). Mr. McKinnon was sentenced to serve 85 months in prison. The court imposed a 5-year term of supervised release, and a $100 special assessment. A. 100-04.

This Court appointed Marjorie M. Smith as counsel on appeal, pursuant to the Criminal Justice Act. Ms. McKinnon is serving his sentence pursuant to the judgment in this case.

## STATEMENT OF FACTS

**The Indictment**

On March 29, 2012, Jermeere McKinnon was charged, in a superseding indictment, with conspiring with several co-defendants to engage in a pattern of

2

racketeering activity as part of his membership in the V-Not Gang, a gang that was charged with engaging in drug trafficking and other illegal activities in Syracuse, New York, from 2003 until 2012, in violation of 18 U.S.C. § 1962(d). A 10-25. The indictment included an allegation that Mr. McKinnon and his co-defendants had conspired to distribute 280 grams or more of cocaine base in violation of 21 U.S.C, § 841(a)(1) and (b)(1)(A). A. 23-24; PSR para. 1-7.[2]

**The Guilty Plea**

_The Guilty Plea Agreement._ On August 8, 2013, Mr. McKinnon entered into a plea agreement in which he agreed to plead guilty to Count One of the superseding indictment, charging him with conspiracy to engage in a pattern of racketeering activity as part of the V-Not Gang. A 26-45. The agreement specified that Mr. McKinnon's membership and association with the gang was documented by cooperating gang members who so identified him. A 29. Multiple overt acts in the indictment detailed McKinnon's involvement, specifically Overt Acts #9, 31, 35, and 37. A 28-30.

The agreement further provided that McKinnon was accountable for between 196 and 280 grams of crack based upon his relevant conduct. A 30. It also stated that he was accountable for possessing a handgun. A 30. It further

---

[2] "PSR __" references are to the indicated paragraph of McKinnon's Pre-sentence Report.

3

stated that the government would recommend a 3-level reduction in McKinnon's otherwise applicable offense level provided he met the requirements for a 3-level reduction for acceptance of responsibility. A 30-31.

The agreement provided that Mr. McKinnon waived his right to appeal or collaterally attack his conviction and sentence if his sentence was 87 months or less. A 31.

The Plea Hearing. At the plea proceeding, Judge Mordue began by recapping the basic terms of the plea agreement Mr. McKinnon had signed. A 47-48. Judge Mordue then advised Mr. McKinnon of his rights with respect to the charges against him that he would be giving up by pleading guilty. A 49-50. After Mr. McKinnon pled guilty to Count 1 of the superseding indictment, Judge Mordue queried him as to his age, his prior use of narcotics and educational background. A 55-58.[3] Mr. McKinnon advised the court that he was currently serving a two year New York State sentence for criminal sale and possession with intent to sell narcotics. A 59-60.

The government stated that if the case went to trial, it would prove the allegations in paragraphs 4 and 5 of the plea agreement, i.e., that Mr. McKinnon

---

[3] Judge Mordue elicited from McKinnon that he was not under the influence of medication or drugs; that he was satisfied with his attorney's representation; and that no promises or threats had been made to induce him to plead guilty. A 57-59.

4

had become involved with the V-Not gang which had engaged in a pattern of racketeering activity in Syracuse, which included possessing with intent to distribute crack cocaine and various acts of violence; McKinnon's involvement was set forth in overt acts 9, 31, 35 and 37. A 60-62. Mr. McKinnon conceded the government's account was largely correct. A 63.

Mr. McKinnon was informed that his maximum sentence was life imprisonment; and that his total offense level was expected to be 29, based on the adjustments referred to in the plea agreement. A 63-64. AUSA Katko stated that Mr. McKinnon appeared to fall into Criminal History Category V, in which case his sentencing guideline range would be 140 to 175 months. A 64. Judge Mordue explained that he would have to take the guidelines into account in fashioning a sentence, but would not be bound by them. A 65. Mr. McKinnon then plead guilty. A. 66-70.

**The Presentence Report**

*Summary of Offense Conduct.* The Presentence Report set forth the government's version of the conduct engaged in by the members of the V-Not gang. PSR. ¶ 1-35. The Report recounted the details of the Overt Acts involving McKinnon's including Overt Act 9, when on November 7, 2007, McKinnon and others were found in an apartment with crack cocaine; Act 31, when pursuant to

5

direction by a V-Not Gang member, McKinnon brought a purported .22 caliber

gun[4] to an individual; Act 35, involving McKinnon's providing a handgun to the

same individual in return for $500; and Acts 36 and 37, involving drug

transactions in which McKinnon was involved on October 18, 2011. PSR ¶ 36-

40.

  The Report stated that the parties had agreed that based on McKinnon's

"relevant conduct and the reasonably foreseeable acts committed by co-

conspirators in furtherance of the [joint] criminal activity" McKinnon was

responsible for the distribution of between 196 and 280 grams of cocaine base,

and he was also responsible for "possession of firearms in connection with the

gang's drug trafficking activity." PSR ¶ 41.

  *Adjustment for Acceptance of Responsibility.*  With regard to Acceptance of

Responsibility, the officer stated that McKinnon had explained that the V-Not

group consisted of "guys who are related or who grew up together and played

sports together. Eventually, their recreational activities turned into criminal

activities." McKinnon was related to three members of the group, and his primary

role was to sell cocaine and marijuana. He also allegedly "acted as a middle man

by selling guns to make a profit." In 2010, he "started distancing himself from

---

  [4] The gun turned out to be a starter pistol. PSR ¶ 38.

6

fellow members" after someone was stabbed while McKinnon was incarcerated. When he was released he "backed away" when he saw how serious the violence had become. McKinnon, while noting that he had been raised by his maternal grandmother (his parents, who were drug addicts, played only a limited role in his life), did not blame his parents or make excuses for his behavior. "He regrets everything he did and is now ready to change his life." PSR ¶ 44-45.

*Offense Level Computation.* The Report calculated that McKinnon's total Offense Level was 29. PSR ¶ 57.[5]

*Criminal History*

McKinnon had several adult criminal convictions, starting when he was 16 years old. PSR ¶ 58-64. None of his prior offenses involved violence.[6] The Report noted that on October 18, 2011, McKinnon had received a sentence of 2 years for possession of a controlled substance in the 3d degree, in Syracuse state court. PSR ¶ 64. (This offense related to Overt Acts 36 and 37 of the federal

---

[5] His base offense level was 30, pursuant to Guideline § 2D1.1(c)(5), because the amount of cocaine base he was involved in distributing was stipulated to be between 196 and 280 grams. PSR ¶ 30. To this 2 levels were added pursuant to U.S.S.G. § 2D1.1(b)(1) because gang members used firearms and McKinnon possessed and/or was aware of firearms that were carried or used in V-Not's drug trafficking activities. PSR ¶ 49. From the resulting level 32, it was anticipated that 3 levels would be subtracted for McKinnon's acceptance of responsibility. PSR ¶ 54-55.

[6] His offenses included possession of controlled substances, forgery (as a youthful offender), unauthorized use of a motor vehicle and attempted petit larceny. Id.

7

indictment, wherein McKinnon was arrested after he met with three individuals from Cortland and agreed to sell them $150 worth of crack.) McKinnon was arrested for the federal offense while he was serving his state sentence for this offense. Id.

McKinnon's criminal convictions resulted in a criminal history score of six, to which 2 points were added because he committed the instant offense while on probation. PSR ¶ 65-66. The resulting total criminal history score of 8 placed McKinnon in CHC IV. PSR ¶67.

Based on a total offense level of 29 and a CHC of IV, his guideline range was 121 to 151 months. PSR ¶ 83.

*Personal Background.* McKinnon, who was 25 years old, was a lifelong Syracuse resident,, who had been raised by his grandmother due to his parents' drug addiction. PSR ¶ 70-71. McKinnon had played football and basketball until he was 15 years old, when he became involved in "the criminal activities that surrounded him." PSR ¶ 73-75. While physically healthy, McKinnon had used alcohol, marijuana and ecstasy starting at age 14. PSR ¶ 77. McKinnon had obtained his GED in 2008, and had worked with his grandfather's paving company. PSR ¶ 78-79.

*Addendum to PSR.* The Probation Department noted that defense counsel

8

had pointed out that McKinnon "was not regularly involved in the sale of guns, nor did he ever possess a gun himself or carry one. . ."[7] PSR Addendum, 11/27/2013. In addition, counsel sought a mitigating role adjustment of at least two levels, pursuant to U.S.S.G. §3B1.2, on the ground that McKinnon

> never participated in any of the gang-related violence; 2) he never carried a gun for his own protection; 3) the guns involved in Overt Acts 31 and 35 were not his guns and he solely acted as a middleman; 4) he did not have any "beefs" or issues with members of other gangs and was actually friends with several Bricktown gang members, having played sports with them; 5) he made a conscious effort to

---

[7] Counsel noted, with respect to paragraph 38 of the Report, which concerned Overt Act 31 that this was

> essentially a gun sale between Jeffrey Powell (the seller) and Edward Thomas (the buyer). McKinnon coincidentally became involved because, while Powell was arranging the sale, McKinnon called Powell to see if he had the $80.00 that he owed him. Powell consequently had McKinnon deliver the gun to Thomas and keep the money as repayment of the debt. Notably, Edward Thomas is McKinnon's cousin.

PSR Addendum. With respect to paragraph 39 of the Report, concerning Overt Act 35, counsel explained that the

> genesis of this transaction. . . goes back to Overt Act 31. In both transactions, McKinnon did not own or possess the gun that was being sold, but acted as a middleman. After the sale involved in Overt Act 31, the buyer, Edward Thomas, was quite upset when he found out that the gun was a starter pistol. McKinnon felt somewhat guilty because he was involved in the transaction that unknowingly defrauded his cousin. Following this initial transaction, Thomas made it clear to McKinnon that he owed him for what happened, and McKinnon felt he had to do something to make things right with his cousin. . . . . [Eventually] McKinnon, bought the gun from Steven, and then sold it to Thomas.

PSR Addendum.

9

distance himself from gang members after the violence escalated in 2010; and 6) the more weight that is given to the violent aspects of the V-Not gang, the more reasonable and just it becomes to credit McKinnon with a minor role adjustment.

PSR Addendum.[8]

## Counsels' Sentencing Submissions

In his sentencing submission, McKinnon's attorney reiterated the concerns he had raised in his correspondence to the Probation Department. A. 72-78. He added information about Mr. McKinnon's background and his upbringing by his grandmother. A. 72-73. Counsel had visited McKinnon's grandmother who agreed that McKinnon's situation "makes no sense because Jermeere is an intelligent, articulate and very nice young man who, as he admits, for no good reason at the age of 15 started using drugs, hanging out with the wrong crowd, and drifted into the criminal activities" that led to his current predicament.[9] A. 74.

Counsel argued that McKinnon should be given a mitigating role adjustment, in light of the fact that the only gang-related activities charged to him among the Overt Acts were the two gun transactions (which were "only tangentially, if at all, related to gang activities"), and that McKinnon's criminal

---

[8] The Probation Department took no position with respect to counsel's contention.

[9] Counsel further noted that "Jermeere smiles easily and he had a smile on his face when he told the Probation Officer about his wonderful childhood" which was due to "the love and care given him by his grandmother. . ." A. 73.

10

history was otherwise unrelated to the V-Not gang. A 74. Notably, McKinnon

had not been charged with involvement in any of the V-Not gang's violent

activities. A 75. Counsel wrote:

> The guns involved in the "gun sales" in overt acts 31 and 35 were not
> his guns and he was, at most, a middleman. . . .Jermeere did not have
> any "beef" or issues with members of other gangs that have been
> prosecuted in this Court. . . Even though the V-Not gang members
> were people he grew up with, and in some cases, relatives, he made a
> conscious effort to distance himself from gang members after the
> violence escalated in 2010.

A. 75-76.

Counsel asked the Court to take into account, in fashioning a sentence under

18 U.S.C. §3553(a)(2), that McKinnon was incarcerated under a New York State

sentence which arose from a drug conviction that was the subject of Overt Acts 36

and 37. A 77. About 18 months of his two year state sentence was spent in jail

after his arraignment on the instant federal charge, but would not be counted by

the Bureau of Prisons against his federal sentence. Because the state

imprisonment satisfied the adjustment criteria of U.S.S.G. § 5G1.3(b) (as relevant

conduct under overt acts 36 and 37), and because the rehabilitative purpose of

incarceration "served its purpose with McKinnon while he was in the state prison

system," the Court should take this "uncredited two year period into account"

when fashioning McKinnon's sentence. A 77. Finally, counsel stressed that

"Jermeere McKinnon has demonstrated true and heartfelt remorse for his involvement in this offense."[10]  The government submitted a Memorandum requesting that Mr. McKinnon be sentenced within the guideline range of 121 - 151 months.  A 84.

*Additional, Off the Record Sentencing Submissions*



---

[10] Counsel added that when McKinnon apologized during his plea proceeding, the "apology was spontaneous, unrehearsed, and it was the product of a new way of thinking and a new attitude that Jermeere has matured into."  A 78.



███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████ 3) re-iterating counsel's request for a mitigating role

adjustment, which was not opposed by the government; and 4) also reiterating that

the Court should take into consideration that McKinnon had been incarcerated on

his state sentence since October 18, 2011, but that only 2 months would be

credited to his sentence in the federal case. Letter of James Medcraf, Esq.,

12/10/13.

## The December 16, 2013, Sentencing

Prior to Mr. McKinnon's sentencing, Judge Mordue held a conference with

counsel in chambers.[12]

After the conference, Judge Mordue began the proceedings in open court by

---

[12] That this off-the-record conference occurred prior to the on-the-record sentencing proceeding is confirmed in the record by AUSA Katko's statement during the sentencing:

> . . .as far as culpability goes . . . [McKinnon] was at the very, very low end. *The government advocated for that when we had a presentence discussion in chambers.* . . .

A. 95. (emphasis supplied).

13

ascertaining that there were no objections to the PSR's calculation of McKinnon's offense level or criminal history calculation. A 88.

Mr. McKinnon's attorney noted that McKinnon had served 24 months for an offense that was part of the instant case, and that he would not get BOP credit for the time. A 89. In addition, McKinnon was the "least involved of any defendant in this case" which also argued for him to receive a "lesser sentence." Counsel asked that the Court subtract the 24 months McKinnon had served on his state sentence from whatever sentence the Court might otherwise impose. A. 89.

Judge Mordue stated that he was adopting the factual information and Guideline applications contained in the PSR, as a result of which he found that McKinnon's total offense level was 24, with a CHC of IV, yielding a guideline imprisonment range of 77 to 96 months. A 91. He then pronounced sentence of 85 months imprisonment and 5 years' supervised release. A 91.

Mr. McKinnon objected that the time he had served on his New York State sentence should be credited towards his federal offense. A 93. Judge Mordue responded that he had considered that argument, but would not afford such a credit. A 93. Judge Mordue added that since he was sentencing McKinnon to less than 87 months, McKinnon could not appeal his sentence. A 93-94.

McKinnon reiterated that he had been led to believe that his time served in

14

New York State custody would be credited on his federal sentence. A 94. AUSA Katko responded that the discussion had been that McKinnon "might be able to get credit for that but you have to see how the sentencing goes and we didn't have all the details. . . . We didn't give him any guarantees about that. . . " A. 94.

AUSA Katko added that

> *as far as culpability goes . . . [McKinnon] was at the very, very low end.* The government advocated for that when we had a presentence discussion in chambers. We also said we would not object to any adjustment in the sentence that basically would take into account his lower range in this case. As I understand it, the Court went much farther down, based on those representations, and gave the defendant the lowest sentence in this case so far.

A. 95. (emphasis supplied).

Judge Mordue then called counsel into chambers.







## ARGUMENT

### Introduction

Following *Booker [Booker v. United States,* 543 U.S. 220 (2005)] and

*Gall v. United States*, 552 U.S. 38 (2007), this Court reviews sentences for

reasonableness. *See Booker*, 543 U.S. at 260-61; *see also United States v.*

*Fernandez*, 443 F.3d 19, 26-27 (2d Cir. 2006). Reasonableness review requires an

examination of the length of the sentence (substantive reasonableness)[15] as well as

the procedure employed in arriving at the sentence (procedural reasonableness).

---

[14] In the Statement of Reasons, Judge Mordue checked off that he had downwardly departed in McKinnon's sentence based on the government's substantial assistance motion. Statement of Reasons, p. 2. Subsection IV D. of the Statement stated that the facts justifying the departure were that the government had made a letter motion for a three-level downward departure, which the Court granted pursuant to 5K1.1, adding that "the Court grants an additional two levels for substantial assistance, and finds the adjusted total offense level is 24 and the adjusted guideline imprisonment range is 77 to 96 months." Statement, p. 2. The Statement added, in section VIII, that "the Court sentenced the defendant in the middle of the Guidelines range, instead of at the high end, because he is at the low end of the culpability scale among defendants in this conspiracy and in consideration of the 24 months of state imprisonment for which he does not receive credit." Statement, p. 4.

[15] In this Court's review of district court sentences, it applies a "deferential abuse-of-discretion standard." *Gall*, 552 U.S. 38.

17

*See United States v. Canova*, 485 F.3d 674, 679 (2d Cir. 2007).

Substantively, the Court will rarely substitute its judgment for that of the district court, but such deference will only be afforded when the Court is

> satisfied that the district court complied with the Sentencing Reform Act's procedural requirements, [which] requires that we be confident that the sentence resulted from the district court's considered judgment as to what was necessary to address the various, often conflicting, purposes of sentencing.

*United States v. Cavera*, 550 F.3d 180, 190 (2d Cir. 2008). Procedural error occurs when the district court, *inter alia* (1) fails to calculate the Guidelines range; (2) is mistaken in the Guidelines calculation; (3) does not give proper consideration to the § 3553(a) factors; or (4) does not adequately explain the sentence imposed. *Id.* at 190. This Court's identification of significant procedural error may be a cause for remanding to the district court for explanation or correction. *Cavera*, 550 F.3d at 190.

**POINT I. THE DISTRICT COURT FAILED TO ADEQUATELY EXPLAIN MR. McKINNON'S SENTENCE, AND INAPPROPRIATELY CONDUCTED PART OF THE SENTENCING OUTSIDE McKINNON'S PRESENCE**

In this case, as provided for under U.S.S.G. §5K1.1, the district court agreed to depart from the sentencing guidelines upon the government's motion stating that the defendant had provided substantial assistance in the investigation or prosecution of others involved in the offense. However, at sentencing, Judge

18

Mordue failed to explain the basis for the sentence of 85 months that he imposed on Mr. McKinnon. During the initial portion of the sentencing proceeding, after a session with counsel in Chambers, Judge Mordue stated that he would not take into account that McKinnon had served approximately 2 years' in state prison based on conduct that was the subject of the federal indictment, for which he would not otherwise receive credit from the Bureau of Prisons.

After McKinnon protested the Court's refusal to give him credit for the state time, asserting that he had been told all along by the authorities that he would be given credit, and that he would have pled guilty immediately upon his indictment had he realized that he would not receive state time credit, Judge Mordue called counsel into chambers for another off-the-record proceeding. Thereafter, the Judge resumed the formal sentencing and informed McKinnon that he was giving him an unspecified sentence reduction to take account of the state sentence he was serving during the pendency of the federal proceeding. But as McKinnon remarked:

> . . . I don't see where he did that. He said he didn't take [the state sentence] into consideration. He came back now and said he is taking it into consideration. I don't know what to believe. . . .

Mr. McKinnon's understandable confusion arose in considerable part from the fact that Judge Mordue conducted both a pre-sentencing and a mid-sentencing

19

conference in chambers, outside Mr. McKinnon's presence. This fact makes it impossible for McKinnon or this Court to know for sure what the Court did or did not conclude regarding the extent to which McKinnon's cooperation and his serving of a New York State sentence for conduct that was also the subject of the federal prosecution should be taken into account in fashioning his sentence.

In *United States v. Coston*, 737 F.3d 235 (2d Cir. 2013) (*per curiam*), wherein Judge Mordue had also conducted a meeting in chambers at which sentencing issues were discussed, this Court instructed that "the preferred way to proceed in criminal cases is under the assumption that nothing is 'off the record'," citing this Court's decision in *United States v. Amico*, 486 F.3d 764, 778-779 (2d Cir. 2007) (stating that "this case demonstrates the importance of maintaining a complete record of all proceedings of substance — in chambers as well as in court — in criminal cases.")[16]

Judge Mordue's conducting two portions of Mr. McKinnon's sentencing

---

[16] The Court Reporters Act ("CRA"), 28 U.S.C. § 753, requires that:

> [e]ach session of the court and every other proceeding designated by rule or order of the court or by one of the judges shall be recorded verbatim. . . . Proceedings to be recorded under this section include (1) all proceedings in criminal cases had in open court; . . . and (3) such other proceedings as a judge of the court may direct or as may be required by rule or order of court [or] as may be requested by any party to the proceeding.

While chambers conferences are technically not in open court, therefore the failure to record them is not a *per se* violation of § 753.

20

off-the-record was procedurally improper and resulted in his failing to properly explain the sentence imposed. As in *Cavera*, 550 F.3d at 190, it should cause this Court to remand to the district court for explanation or correction in an on-the-record proceeding.

## POINT II. McKINNON'S SENTENCE OF 85 MONTHS' IMPRISONMENT, SHOULD BE SET ASIDE BECAUSE IT IS UNREASONABLE [17]

When conducting substantive review, this Court takes into account "the totality of the circumstances, giving due deference to the sentencing judge's exercise of discretion, and bearing in mind the institutional advantages of district courts." *See United States v. Cavera*, 550 F.3d 180, 189-90 (2d Cir.2008) (*en banc*). As this Court wrote in *United States v. Castillo*, 460 F.3d 337, 354 (2d Cir. 2006), "[d]istrict court sentencing after *Booker* centers around 18 U.S.C. §3553(a), which calls on the district court to 'impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection' and to 'consider' the [remaining § 3553(a)] factors . . . ."[18] *See also,*

---

[17] This Court reviews sentencing findings of fact under the clearly erroneous standard, *United States v. Selioutsky*, 409 F.3d 114, 119 (2d Cir. 2005).

[18] Section 3553(a)(1) and (2) provide that the court consider "the nature and circumstances of the offense and the history and characteristics of the defendant" and impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2), i.e., the need for the sentence imposed

21

*United States v. Ministro-Tapia,* 470 F.3d 137 (2d Cir. 2006).

Recognizing that no specific verbal formulations are prescribed to demonstrate the adequate discharge of the duty to "consider" matters relevant to sentencing, *see United States v. Fleming,* 397 F.3d 95, 100 (2d Cir. 2005), nevertheless, Judge Mordue failed to justify the imposition a Guidelines sentence of 85 months on Mr. McKinnon.

In Mr. McKinnon's case, in deciding to impose an 85 month sentence, the Court failed to address why a shorter period of incarceration, combined with the 5-year period of supervised release that was part of McKinnon's sentence, would not serve as an adequate sanction and check on the possibility of McKinnon engaging in future misconduct.

In *Gall,* 128 S. Ct. at 596-597, the Supreme Court reiterated that district judges, in considering how the various statutory sentencing factors apply to an individual defendant, "may not presume that the Guidelines range is reasonable." This Court has recognized that "district courts are to impose sentences pursuant to the requirements of § 3553(a)--including the requirements of § 3553(a)'s

---

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. . .

22

parsimony clause--while appellate courts are to review the sentences actually imposed by district courts for reasonableness." *United States v. Williams*, 475 F.3d 468, 477 (2d Cir. 2007). In this case, the District Court never acknowledged its parsimony clause obligation pursuant to 18 U.S.C. § 3553(a); nor addressed whether an 85 month sentence was the lowest reasonable sentence, taking into account that McKinnon had offered substantial cooperation to the government, at serious personal risk to himself; that he had played the least culpable role in the RICO activity; and that he had already served a 2 year sentence in state court for which he would not receive BOP credit, whereas had he pled guilty at the inception of the case, which he would have done absent the assurances he received that he would receive credit from the Court for his state sentence time.

In the Court's Statement of Reasons, Judge Mordue stated that he had sentenced McKinnon "in the middle of the Guidelines range, instead of at the high end, because he is at the low end of the culpability scale among defendants in this conspiracy and in consideration of the 24 months of state imprisonment for which he does not receive credit." Statement of Reasons, p. 4. But there is no reason for the Court to have sentenced Mr. McKinnon as if there was a presumption that the high end of the Guideline range was applicable, particularly when the Court itself recognized McKinnon's low degree of culpability and the justice of his being

23

credited for the time he had served in New York State prison, which the BOP would not afford him.

In short, because the District Court did not adequately justify its conclusion that a sentence of 85 months' imprisonment was necessary to punish, deter, and rehabilitate Mr. McKinnon in accordance with 18 U.S.C. § 3553(a), this Court should remand for resentencing.

## CONCLUSION

For the reasons set forth above, appellant McKinnon's sentence should be vacated and the case remanded for further proceedings consistent with this Court's opinion.

Dated: June 4, 2014

MARJORIE M. SMITH
109 Wolcott Street, Suite 2
Brooklyn, NY 11231
(845) 365-6335
Attorney for Appellant Jermeere McKinnon

24